UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES C. DeBOSER                                                                    PLAINTIFF

V.                              Case No. 1:06cv00068-BD

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                      DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff James C. DeBoser has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ")[1] is affirmed.

I.      **Procedural History:**

Plaintiff James C. DeBoser applied for SSI benefits on July 10, 2003, alleging disability since July 1, 1997. (Tr. 55) His claim was denied initially and upon reconsideration. (Tr. 28-31) Subsequently, Mr. DeBoser requested a hearing (Tr. 41), and a hearing was held on August 22, 2005 (Tr. 296-329). The ALJ issued a decision on June 27, 2006, finding that Mr. DeBoser was not eligible for SSI benefits. (Tr. 13-19) The Appeals Council declined review (Tr. 4), thus making the ALJ's decision the

---

[1] The Honorable David J. Manley, Administrative Law Judge.

Commissioner's final decision. Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## II. Background:

At the time of the hearing, Plaintiff was forty-eight years old. (Tr. 302) Plaintiff testified at the hearing that he had worked as a heavy equipment operator, a truck driver, and a wrecker service worker. (Tr. 302-08) Plaintiff had completed all but the last two weeks of the ninth grade (Tr. 313), but had training as an automobile mechanic, and is certified to work on Honda and General Motors cars. (Tr. 302-304) Plaintiff claimed disability as a result of heart problems, high blood pressure, and back pain. (Tr. 310) He also complains of swelling in his legs, shortness of breath (Tr. 315), and numbness in his fingers and feet in cold weather (Tr. 316).

## III. Findings of the ALJ:

The ALJ followed the five-step sequential analysis set out in the social security regulations, 20 C.F.R. §§ 416.920(a)(4), and found: (1) that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability; (2) that he suffered from a "severe impairment," as that term is interpreted for purposes of the Social Security Regulations; (3) that Plaintiff did not have an impairment, or combination of impairments, that rose to the level of severity for any impairment listed in Appendix 1 to Subpart P, Regulation No. 4; (4) that Plaintiff could not return to his past work; but (5)

that Plaintiff had the residual functional capacity to perform medium work;[2] and that there were jobs in significant numbers in the national economy that Plaintiff could be expected to perform, regardless of the transferability of vocational skills, according to Rules 203.2 and 203.27 of the Medical-Vocational Guidelines set out in Appendix 2 to Subpart P of the Social Security Regulations.  Based on these findings, the ALJ found Plaintiff was not disabled under the Act.

Plaintiff contends that the findings of the ALJ are not supported by substantial evidence and contain errors of law based on the following: (1) the ALJ failed to take in account the reports of two cardiologists, Dr. Jon Lindemann and Dr. Ben Johnson, who had treated or examined Plaintiff (Plaintiff's Brief, 4- 6); (2) the ALJ erred in relying on the report of a non-examining physician at the State agency, whose report was generated before Plaintiff was examined by Dr. Lindemann and Dr. Johnson (Plaintiff's Brief, 7-9); (3) the ALJ erred in using the Medical Vocational Guidelines because the Plaintiff had significant non-exertional limitations (Plaintiff's Brief, 10- 11); and (4) the ALJ failed to evaluate Plaintiff's credibility appropriately (Plaintiff's Brief, 12-14).

The Commissioner responds that the ALJ's decision is supported by substantial evidence because: (1) the ALJ's opinion specifically notes that he considered all of the evidence in the record; (2) the reports by Dr. Lindemann and Dr. Johnson are not contrary

---

[2] "Medium work" is defined as work involving the "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

to the ALJ's conclusion; (3) the ALJ's assessment of Plaintiff's residual functional capacity is supported by the Plaintiff's own consulting physician, Dr. Gary Nunn; (4) the ALJ properly relied upon the Medical-Vocational Guidelines after discrediting Plaintiff's subjective, non-exertional complaints; and (5) the ALJ properly discounted Plaintiff's subjective complaints under *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

## IV. Legal Analysis:

### A. *Standard of Review*

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g). "If the decision of the Commissioner is supported by substantial evidence on the record as a whole," that decision must be affirmed. *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F3d 575, 578 (8th Cir. 2006).

The ALJ is responsible for deciding fact questions, including the credibility of a claimant's subjective testimony about his limitations. *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives

good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." *Id*. at 714; see also *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("We will not disturb the decision of an ALJ who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain.").

Thus, this Court's review is limited. The only question for this Court is whether there is substantial evidence in the record as a whole to support the ALJ's conclusion that Mr. DeBoser is not disabled under the Act.

    B.    *Medical Evidence*

The medical evidence indicates that Plaintiff suffers from hypertension, aortic valve disease resulting in mild aortic regurgitation and stenosis (Tr. 256).  As of December 28, 2004, Plaintiff's blood pressure was controlled, according to the report of his treating physician, Dr. Lindemann.  (Tr. 256)  Dr. Lindemann "admonished [Plaintiff] in the strongest possible terms to quit smoking" at the December 28, 2004 office visit.  (Tr. 257) Plaintiff has been advised by doctors to stop smoking many times.  (Tr. 227, 244, 257, 275) As of the date of the hearing, Plaintiff continued to smoke.  (Tr. 310)

At the close of the hearing, the ALJ announced that he would send Plaintiff for a consultative examination.  (Tr. 323, 327) As a result, Plaintiff was examined by Dr. Ben Johnson on November 7, 2005.  (Tr. 279-81) Plaintiff told Dr. Johnson that he suffered from dyspnea (shortness of breath), fatigue, chest pain, dizziness, and fainting spells.  (Tr. 279-280)  Dr. Lindemann, however, noted on July 27, 2005, that Plaintiff's

lightheadedness had been "resolved" by changing one of Plaintiff's medications. (Tr. 275) Dr. Lindemann also noted in the July 25, 2005 examination that Plaintiff had no chest pain, syncope or pre-syncope, and that Plaintiff's leg edema also was "resolved." (Tr. 275)

Dr. Johnson also reported that Plaintiff "has had some back problems in the past" (Tr. 280), and that Plaintiff was a "heavy smoker." (Tr. 280) Plaintiff testified at his hearing that he smoked less than one pack of cigarettes per day. (Tr. 310) At the time of his examination by Dr. Johnson, Plaintiff's blood pressure was normal. (Tr. 281)

Perhaps of most importance, Dr. Johnson noted that Plaintiff's heart function had improved with medication and that his heart "ejection fraction" had improved from a previous low of 30% to 45-50%. (Tr. 279) Plaintiff testified at his hearing that Dr. Lindemann had told him that "right now" his heart was "okay," and to return for an appointment in six months. (Tr. 311)

Dr. Gary Nunn examined Plaintiff on March 9, 2005. (Tr. 272-274) Plaintiff's chief complaint to Dr. Nunn was weakness in his legs and shortness of breath after walking one block. (Tr. 272) After examining Plaintiff, Dr. Nunn opined that Plaintiff could lift up to 20 pounds frequently, and up to 100 pounds occasionally. (Tr. 274)

The ALJ's assessment of Plaintiff's functional capacity is also supported by the finding of Dr. Thomas Smith, a non-examining agency doctor. (Tr. 147-154)

C.      *Plaintiff's Activities of Daily Living*

Plaintiff's application for benefits reflects that he is able to take care of all of his personal needs and to perform many other tasks of daily living, including: doing laundry and dishes; changing sheets, ironing, vacuuming, taking out trash, completing minor home and car repairs, washing his car, shopping for groceries and clothes, cooking five meals per week, driving, watching television, playing video games, visiting friends and relatives, as well fishing and hunting.  (Tr. 72-73)  Plaintiff raced cars every weekend up until mid-2004 (Tr. 309), although he maintains that the onset of his disability was in 1997.  Plaintiff still sometimes "hangs out" at the race track, although he does not stay for the whole time.  (Tr. 309, 312)

D.      *Reports of Dr. Lindemann and Dr. Johnson*

Plaintiff's complaint that the ALJ ignored the medical reports from Dr. Lindemann and Dr. Johnson is not well founded.  The ALJ's decision makes numerous references to the records of both Dr. Lindemann (identified in the record as Exhibits 14F and 15F) and Dr. Johnson (identified as Exhibit 16F).  Furthermore, the ALJ specifically stated that he based his decision on the record, as a whole and made his findings "reviewing all of the evidence of record."  (Tr. 13)   In any event, this Court is not required to reverse the decision of the ALJ because there is evidence in the record which the ALJ did not discuss or which contradicts his findings.  The test is whether there is substantial evidence in the

record as a whole to support the ALJ's decision. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

Plaintiff correctly observes that both Dr. Lindemann and Dr. Johnson noted that Plaintiff would fall into Class II of the New York Heart Association classification of patients with heart disease. (Tr. 275, 281) Class II includes "[p]atients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." (Tr. 96) The ALJ found that Plaintiff could not return to his past work, which was classified as either skilled or semi-skilled, heavy work by the vocational expert called to testify in the case. (Tr. 325)

    E.    *Use of Medical Vocational Guidelines*

Plaintiff contends that the ALJ erred in using the Medical Vocational Guidelines ("Guidelines") in the light of his significant non-exertional limitations. (Plaintiff's Brief, 10-11)

> If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled.

*Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997). Stated another way, "'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the

8

Guidelines.'" *McGeorge v. Barnhart*, 321 F.3d 766, 768-769 (8th Cir. 2003) (quoting *Thompson v. Bowen*, 850 F.2d 346, 349-50 (8th Cir. 1988)).

Plaintiff's argument about the Guidelines hinges on whether the ALJ properly assessed Plaintiff's functional capacity to perform medium work. He argues that his dizziness, fatigue, light-headedness, and shortness of breath constitute significant non-exertional impairments. (Plaintiff's Brief, 10) The medical records indicate that Plaintiff's dizziness and light-headedness were "resolved" by discontinuing one of his medications. (Tr. 275) As indicated by the Class II designation of Plaintiff's heart impairment, Plaintiff suffered only "slight limitation of physical activity." This designation takes into account possible fatigue and shortness of breath. (Tr. 96)

There is substantial evidence in the record to support the ALJ's finding that Plaintiff can perform medium work, based on the medical evidence and Plaintiff's daily activities. Thus, there was no error in the ALJ's use of the Guidelines.

F.   *Plaintiff's Credibility*

Plaintiff contends that the ALJ erred by discounting his credibility. The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d at 724. The ALJ made express credibility findings and gave reasons for discrediting the Plaintiff's testimony. See *e.g. Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996). The ALJ noted that

Plaintiff's subjective complaints of disability due to fatigue and shortness of breath were inconsistent with the medical findings and with his daily activities.

## V.     Conclusion:

The Court has reviewed all of the evidence in the record, including the medical evidence, the agency physicians' assessment, and the hearing transcript.  There is substantial evidence in the record as a whole to support the ALJ's conclusion that Plaintiff's impairments, whether alone or in combination, do not meet or equal a listed impairment and that Plaintiff retained the functional capacity to perform medium work. Although Plaintiff offered evidence to the contrary; what evidence to believe and what weight to give it is the prerogative of the fact-finder, within broad limits. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the case, this 5th day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE